# THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY

**CHERL LUTZ**
**Plaintiff**

v.                    <u>**CIVIL ACTION NO.**</u>

**AUTO INJURY SOLUTIONS**
**Defendant**

## COMPLAINT

### INTRODUCTION

1. This is a civil action brought pursuant to Title VII of the 1964 Civil Rights Act, 42 U.S.C. Section 2000( e ) – 2 (a) – 1 and the New Jersey Law Against Discrimination <u>N.J.S.A.</u> 10:5 – 12 seeking damages against Defendant for committing acts in violation of federal and state laws that guarantee Plaintiff equal protection of the law and freedom from discrimination.

### JURISDICTION AND VENUE

2. Jurisdictions over Plaintiff's federal statutory claims for redress, are conferred on this Honorable Court by 28 U.S.C. Section 1343. Federal question jurisdiction is conferred on this Honorable Court by U.S.C. Section 1331 because this action

1

arises under the laws of the United States. Plaintiff further invokes thee supplemental jurisdiction of this court pursuant to 28 U.S.C. Section 1367 to adjudicate pendent claims arising under the laws of the State of New jersey N.J.S.A. 10:5 – 1 et seq.

3. Venue is proper in this court under 28 U.S.C. Section 1931(b) because the incidents at issue occurred in New Jersey.

## PARTIES

4. Cheryl Lutz is a women of African American origin. She is a citizen of the United States and a resident of New Jersey. She was employed by Auto Injury Solutions from February 2014 to May 2014.

5. Auto Injury Solutions is a company based in New Jersey that offers customizable, end-to-end medical review solutions to clients for medical claims resulting from automobile accidents involving first and/or third party injury coverages(s). It leverages technology, advanced data analytics and customer service to provide customers with an array of solutions to optimize processes across the full auto claims management spectrum.

## STATEMENT OF FACTS

6. Cheryl Lutz was employed by Auto Injury Solutions on February 11, 2014 as a Recruitment Specialist. Her duties were to recruit and credential physicians. Her immediate supervisor was Ms. Lorie Wilson (white female, age 30s) and her

second level supervisor was Ms. Carolyn Williams (white female, age 40's ) whose title was Director of Medical Advisory Solutions.

7.Ms. Williams supervised over 100 employees in addition to Ms. Lutz. Ms. Williams lives in Maryland and supervises employees responsible to her from New Jersey. Ms. Williams was never on site and had no first hand knowledge of work activities in the New Jersey office.

8.Ms. Williams communicated with Lorrie Wilson, who is a supervisor, who lives in Syracuse, New York. Ms. Wilson conveyed to Ms. Williams, on a daily basis, what was happening in the New Jersey office in terms of accomplishments and employee interactions. (No supervisors of this department, (either Ms. Wilson or Ms.Williams)  work in the New Jersey office.

9.When Ms. Lutz started her employment her working conditions were fine. She was told that she was performing her duties appropriately and well by Ms. Lorrie Wilson. Also, Ms. Wilson applauded her performance by saying she  was a hard and reliable worker.

10.Ms. Lutz received one day of training on her start date, Tuesday, February 11, 2014, on the tasks she was to perform on a daily basis.

11.Her problems started on or about March 12, 2014 when Ms. Williams criticized her for not knowing how to work the computer because she had problems logging

into the computer. Ms. Lutz attempted to explain to Ms. Willliams that the problem was that the company had input the wrong information which caused her to be unable to log in to the computer. Other employees, mainly white women, had similar problems with the computer, were unable to log in, but were not similarly reprimanded.

12. Ms. Williams stated she gave Ms. Lutz a verbal warning for not submitting a document needed for a file. Ms. Lutz asked Ms. Williams "how can I receive a verbal warning when I'm is still just learning the process" . Ms. Lutz complained that the verbal warning was not fair to her as a new employee who had not fully been trained on the computer. The verbal criticisms upset Ms. Lutz and caused her to fear for her job.

13. Thereafter Ms. Williams attitude towards Ms. Lutz changed. She attempted to be critical of all of Ms. Lutz's work product. After Ms. Lutz lodged her verbal complaint, Ms. Williams criticized Ms. Lutz for every seeming mistake that was made. The continuous criticism increased Ms. Lutz' angst for her job and made completion of her tasks more difficult. Other employees were not similarly criticized

14. In several instances, Ms. Lutz was not even assigned to the task, yet Ms. Williams criticized her for someone else's error. The erroneous criticisms were

4

put on Ms. Lutz' record. Ms. Lutz began to appreciate that she was being singled out for criticism. She found the continuous criticism upsetting and disheartening.

15. On April 14, 2014 a crisis arose involving the preparation and submission of W-9 forms for all physicians (medical doctor's) files. Ms. Lutz was assigned and therefore responsible for sending the appropriate W-9 forms to Ms. Williams, She was also responsible for alphabetizing the files, placing them in acrobat format and scanning them for transmission to Ms. Williams. Ms. Lutz was told that this was urgent and needed to be completed by the end of the business day on April 14, 2014.

16. Ms. Lutz was reprimanded and given a written warning because one of the Doctors did not sign his W-9 form yet she forwarded the form to Ms. Williams. All these files that were submitted previous approved by her supervisor Lori Williams and signed off by Ms. Williams as being complete files.

17. The failure to secure signatures on all W-9 forms is an error that other employees made in transmitting W-9 forms from New Jersey to Ms. Williams. Other employees, notably white employees made similar errors but were not reprimanded or terminated for making similar mistakes.

18. Auto Injury Solutions terminated Ms. Lutz on May 29, 2014 for allegedly failing to secure the signature of one doctor on April 14, 2017.

5

## COUNT I

### THE CIVIL RIGHTS ACT OF 1964
### TITLE VII, 42 U.S.C. Section 2000( e ) – 2(a)-(1)

### DISCRIMINATORY WRONGFUL TERMINATION AND HOSTILE ENVIRONMENT HARASSMENT

### BASED ON RACE AND AGE

19. Plaintiff incorporates by reference paragraphs 6 through 18 as if fully set forth herein.

20. Defendants intentionally denied Ms. Lutz the same rights and protections guaranteed by Title VII of the Civil Rights Act of 1964 to the equal benefits of all laws and proceedings for the security of persons and property, as is afforded to her with white co-workers. Defendants intentionally violated Ms. Lutz' right to be free from wrongful abuse and termination. Defendant engaged in actions that altered the terms and conditions of Plaintiff's employment.

21. Defendants refused to address the instant issue of disparate treatment, and any other adverse employment actions against Ms. Lutz.

22. The actions taken by Auto Injury Solutions denying Ms. Lutz freedom from arbitrary and race based termination was done because of Ms. Lutz' race.

23. There is a direct nexus between Defendants actions and decisions and Plaintiff's action to resolve any employment issues. There is also a direct nexus between the abusive, hostile and offensive actions of Defendant and Plaintiffs loss of a positive productive and gainful experience at her place of employment.

24. As a direct and proximate result of the actions of Auto Injury Solutions, Ms. Lutz has suffered lost wages and other economic losses and other compensations such as benefits and contributions to her pension fund and will continue to suffer severe damages and injuries including, but not limited to humiliation, loss of self-esteem, embarrassment, hurt, fear, frustration, emotional distress, inconvenience and damage to her professional reputation.

**WHEREFORE,** Plaintiff demands judgment against Defendant and the following relief:

A - An award of equitable relief for lost wages, compensation, future lost earning, economic losses, pre- and post- judgment interest and any other affirmative relief that may be deemed appropriate at trial; and

B - An award of pecuniary compensatory damages for the emotional injuries that are suffered as a direct result of Defendant's unlawful conduct including, but not limited to, humiliation, loss of self-esteem, embarrassment, hurt, fear, frustration, emotional distress, inconvenience and damage to her professional reputation; and

C - An award of the disbursement, cost, expenses, expert witness fee's incurred by Plaintiff in bringing this action; and

D - Such other relief that the court deems proper and just.

## COUNT II

### THE NEW JERSEY LAW AGAINST DISCRIMINATION (LAD)
### N.J.S.A. 10:5-12
### DISCRIMINATORY WRONGFUL DISCHARGE
### AND HOSTILE ENVIRONMENT HARASSMENT
### BASED ON RACE AND AGE

25. Plaintiff incorporates aby reference paragraphs 6 through 18 as if fully set forth herein.

26. Defendant intentionally denied Ms. Lutz the same rights and protections guarantee by the New Jersey Law Against Discrimination to the equal benefits and all proceedings for the security of persons and property as enjoyed by whited co-workers.  Defendant intentionally violated Ms. Lutz' right to be free from abusive, offensive and humiliating actions designed to offend and humiliate her.  Defendant engaged in actions that altered the terms and conditions of Plaintiff's employment.

27. The actions taken by Auto Injury Solutions denied Ms. Lutz a position and salary that is commensurate with assignments performed because of Ms. Lutz' race.

28. There is a direct nexus between Defendant's actions and decisions and the Plaintiff's efforts to resolve any employment problems. There is also a direct nexus between the abusive, hostile and offensive actions to Defendant and Plaintiff's loss of a positive, productive and gainful experience at her place of employment.

29. As a direct and proximate result of the actions of Auto Injury Solutions Ms. Lutz has suffered lost wages and other economic losses and other compensation such as benefits and contributions to her pension fund and will continue to suffer severe damages and injuries including, but not limited to, humiliation, loss of self-esteem, embarrassment, hurt, fear, frustration, emotional distress, inconvenience and damage to her professional reputation

**WHEREFORE,** Plaintiff demands judgment against Defendant and the following relief:

A - An award of equitable relief for lost wages, compensation, future lost earnings, economic losses, pre- and post- judgment interest and any other affirmative relief that may be deemed appropriate at trial, and

B - An award of pecuniary compensatory damages for the emotional injuries suffered as a direct result of Defendant's unlawful conduct including, but not limited to, humiliation, loss of self-esteem, embarrassment, hurt, fear, frustrations, emotional distress, inconvenience and damage to her professional reputation, and

C - An award of the disbursements, costs, expenses, expert witness fees, incurred by Plaintiff in bringing this action, and

D - Such other relief as the court deems proper and just.

**NO JURY DEMAND IS ASSERTED AND PLAINTIFF SEEKS A BENCH TRIAL**

Respectfully submitted,

*[signature]*

Clifford G. Stewart, Esq.
The Law Office of C. Gregory Stewart
535 Thirteenth Avenue
Newark, New Jersey 07103
(973)-474-6062
cgregorystewart@gmail.com

*Attorney for Plaintiff, Cheryl Lutz*